No. 19-mj-4554-DHH

## AFFIDAVIT OF SPECIAL AGENT ANDREW KIRK IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Andrew Kirk, being first duly sworn, hereby depose and state:

### I. INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since July of 2019. I am currently assigned to one of the FBI's Counterintelligence Squads in the Boston Field Office. Previously, I was employed as a Special Agent with the Air Force Office of Special Investigations. I worked in this capacity for six years. I have participated in numerous investigations, during the course of which I have interviewed witnesses, conducted physical surveillance, executed search warrants, and used other investigative techniques to secure relevant information regarding various federal crimes.

2.  Along with other agents, I am currently investigating Zaosong ZHENG, a 29-year-old Chinese citizen (hereinafter "ZHENG"), and I am submitting this affidavit in support of an application for a search warrant of ZHENG's residence for smuggling goods from the United States, in violation of 18 U.S.C. § 554(a), and making false, fictitious and fraudulent statements in a manner within the jurisdiction of the Executive Branch of the United States, in violation of 18 U.S.C. § 1001(a)(2).

3.  As described below, based upon the evidence gathered to date in the ongoing investigation, I have probable cause to believe, and do in fact believe, that on December 9, 2019, that ZHENG knowingly and willingly attempted to export from the United States, merchandise, articles, or objects, to wit: 21 vials of biological materials, contrary to laws or regulations of the United States in violation of 18 U.S.C. § 554(a). Additionally, I have probable cause to believe, that on December 9, 2019, ZHENG did knowingly and willfully make a series of materially

1

false, fictitious, and fraudulent statements to both Customs and Border Protection (CBP) Officers and Federal Bureau of Investigation (FBI) Agents, in violation of 18 U.S.C. § 1001(a)(2).

4. This affidavit is being submitted in support of an application for a search warrant authorizing the search of ZHENG's residence, 400 Brookline Avenue, Apt 8a, Boston, Massachusetts, ("Subject Premises") as described in Attachment A hereto for evidence, fruits, and instrumentalities of the crimes listed above, as described in Attachment B.

5. The information in this affidavit is based upon my training and experience, my personal knowledge of this investigation, and information conveyed to me by other agents and law enforcement officials who have assisted in this investigation and have experience investigating counterintelligence matters. Because this affidavit is submitted for the sole purpose of seeking the issuance of a search warrant for ZHENG's residence, it does not include every fact known to me concerning the investigation. Instead, I only have included those facts that I believe are needed to establish the requisite probable cause to support the search warrant application.

## II.  APPLICABLE LAW AND REGULATIONS

6. 18 U.S.C. § 554, prohibits smuggling goods from the United States. Specifically, it prohibits anyone "fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation." 49 C.F.R. § 173.4b is a federal regulation of the United States that sets forth packaging, labeling and shipping requirements for air travel with biological scientific research specimens. Specifically, it provides that vials containing biological specimens be placed in a

heat-sealed bag, that the heat-sealed bag be bagged again (i.e. double-bagged) and that the outer packaging be properly labeled "scientific research specimens, 49 CFR 173.4b applies."

7.  18 U.S.C. § 1001(a)(2), makes it a crime to make any materially false, fictitious, or fraudulent statement or representation engage in misleading conduct toward another person with the intent to hinder, delay, or prevent the communication to a law enforcement officer of information relating to the commission or possible commission of a federal offense.

### III.  PROBABLE CAUSE

8.  ZHENG, a 29-year-old Chinese citizen in the United States on a J-1 exchange visitor Visa, was a research scholar working at Beth Israel Deaconess Medical Center ("BIMDC") on cancer research.  On December 9, 2019, ZHENG was scheduled to depart from Boston Logan International airport on Hainan flight #482 to Beijing, China.  CBP Agriculture Specialists assigned to Boston Logan International airport identified ZHENG as a high risk for possibly exporting undeclared biological material.

9.  As a result, CBP Officers went to the Hainan bag room where they were able to locate two checked bags in ZHENG's name.  The checked bags were physically examined and inside a sock 21 vials were discovered.  The vials were visually inspected and appeared to contain a brown liquid. Each vial had both typed and handwritten descriptions and notes on them.  Based upon my experience and training and discussions with agents working on this matter, these vials contained what appeared to be biological material that were not properly declared or packaged for transportation in commercial aircraft.

10.  A short time later, CBP Officers identified ZHENG and approached him before he boarded the aircraft.  CBP Officers asked ZHENG multiple times if he was traveling with any biological items or research material in either his carry-on or checked luggage.  ZHENG replied

"no." ZHENG was then removed from the jetway and escorted to the baggage secondary where he acknowledged his ownership of the checked baggage that had previously been identified as his.

11. Once in the secondary area, CBP Officers began their inspection. ZHENG was asked why he did not declare the vials that were found in his checked luggage and he stated that "they were not important and had nothing to do with his research."

12. As the interview progressed, ZHENG stated that the vials were given to him by a friend "Zhang TAO." ZHENG claimed that TAO is a fellow researcher at the lab were ZHENG worked, who was working with genetically modified cells. ZHENG had no plans to do anything with the vials, but ZHENG could not explain why he was attempting to leave the United States with the vials concealed in a sock in his checked bag. These vials were not placed in a heat-sealed bag, they were not double-bagged and none of the packaging (in this case a sock) was labeled "scientific research specimens, 49 CFR 173.4b applies" as required by 49 C.F.R. § 173.4b(b). Based upon my experience and training, I believe ZHENG hid the vials in his sock to avoid having to declare that he was exporting and transporting biological materials to China, and conceal the fact that he was transporting stolen research materials.

13. Shortly thereafter, ZHENG was brought to an interview room where he confessed that he had stolen eight vials from the research laboratory where he worked and that no one else was aware of this. ZHENG also stated that he personally replicated eleven vials based on Zhang TAO's research.

14. ZHENG stated that he replicated this research over a two to three month period while working at his research laboratory and that the research laboratory was unaware of this. ZHENG stated that his plan was to take the vials to his lab at Sun Yat-Sen Memorial Hospital, in

China, for further analysis.

15.     ZHENG stated that upon his return to China, he was planning to immediately go to his lab and begin working on his research using the stolen vials. ZHENG explained that if the results of his research were successful in any way, he planned to publish a paper in his name.

16.     In ZHENG's baggage, the CBP Officers also found a laptop belonging to another Chinese national, Lei LIU. ZHENG explained that he was leaving the United States with this laptop because LIU "could not fit it in his luggage." A basic search of this device resulted in the discovery of what appeared to be research material.

17.     The vials were seized for failure to declare and are currently being examined to determine their contents.

18.     On December 10, 2019, after advising ZHENG of his *Miranda* rights, FBI Agents interviewed ZHENG. ZHENG stated the night before his flight to China, he went to the lab at approximately seven or eight o'clock to retrieve the vials. ZHENG said some people were probably at the lab at the time he went, but that he did not see anyone while he was there. ZHENG wrapped the vials in plastic before he left, and then took them back to his apartment, where he stored them in his refrigerator. Before his flight he placed the vials in a sock, because he needed a place to put them.

19.     ZHENG grew the cells at his lab without authorization. He also stored the vials and later took them from the lab without authorization. ZHENG said that he planned to store the vials at his research lab in China, and use them at a future date. ZHENG did not have any specific plans for what he was going to do with the vials, but his overall plan was to use the vials to test new medicines.

20.     ZHENG also had PowerPoint presentations and Principal Investigator updates

pertaining to his research on his computer, which he planned to take to China.  ZHENG asserted he had authorization to send these updates to his academic advisor in China.

21.     The BIDMC lab where ZHENG worked is the recipient of National Institutes of Health grants.

22.     According to public and state records, ZHENG's resides at 400 Brookline Avenue, Apartment 8a, Boston, Massachusetts, the Subject Premises.  Agents have also been to the apartment building at 400 Brookline Avenue, and confirmed with apartment management that ZHENG lives in Apartment 8a.

23.     During ZHENG's interview, he disclosed the process by which he removed the vials from his research laboratory without approval.  ZHENG said he transported the material to his residence.  During ZHENG's December 10, 2019 interview with FBI Agents, ZHENG acknowledged he stole the vials from the lab to take them back to China to use for his own research.  Based upon ZHENG's admission of transporting stolen material to his residence, I have probable cause to believe ZHENG possessed stolen research material at his residence.  Based upon the research material found in ZHENG's baggage on December 9, 2019, I have probable cause to believe and do believe that his home will contain evidence of additional research material stolen from his research laboratory; to include biological material, research notes, and communications with foreign entities in China related to this type of research.  Based on my training and experience, as well as the facts of this investigation, I have probable cause to believe, and do believe that evidence, fruits and instrumentalities of ZHENG's crimes will be present at the Subject Premises.

## IV.  CONCLUSION

25. Based on the information described above, I have probable cause to believe that ZHENG has violated 18 U.S.C. §§ 1001, and 554(a).

26. Based on the information described above, I also have probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, are contained within the Subject Premises described in Attachments A.

*Andrew Kirk*
ANDREW KIRK
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me this 17th day of December 2019.

HON. DAVID H. HENNESSY
United States Magistrate Judge